1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DORA DAVIS,

                                Plaintiff,

       v.

MICHAEL J. ASTRUE. Commissioner of
Social Security,

                          Defendant.

Case No. 3:11-cv-06023-RJB-KLS

REPORT AND RECOMMENDATION

Noted for October 12, 2012

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On October 18, 2007, plaintiff filed an application for SSI benefits, and on October 22, 2007, she filed another one for disability insurance benefits, alleging in both applications that she became disabled as of November 15, 2006, due to recurrent severe major depression and an anxiety disorder. See Administrative Record ("AR") 16, 115, 118, 137.  Both applications were

REPORT AND RECOMMENDATION - 1

denied upon initial administrative review on February 22, 2008, and on reconsideration on May 20, 2008. See AR 16, 59, 66, 74. A hearing was held before an administrative law judge ("ALJ") on March 24, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 28-54.

On May 5, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 16-24. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on November 17, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On December 28, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #3. The administrative record was filed with the Court on March 9, 2012. See ECF #12. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits, because the ALJ erred: (1) in evaluating the medical opinion source evidence in the record; (2) in discounting plaintiff's credibility; (3) in failing to properly consider the lay witness evidence in the record; and (4) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy, and therefore not disabled. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

REPORT AND RECOMMENDATION - 2

1    Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

2    support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767

3    F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. See

4    Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F.

5    Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational

6    interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577,

7    579 (9th Cir. 1984).

8    I.       The ALJ's Evaluation of the Medical Evidence in the Record

9            The ALJ is responsible for determining credibility and resolving ambiguities and

10   conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

11   Where the medical evidence in the record is not conclusive, "questions of credibility and

12   resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

13   642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v.

14   Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

15   whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

16   all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

17   within this responsibility." Id. at 603.

18           In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

19   "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

20   "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

21   stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

22   "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

23   draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

REPORT AND RECOMMENDATION - 3

1

F.2d 747, 755, (9th Cir. 1989).

2

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

3

opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

4

1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

5

only be rejected for specific and legitimate reasons that are supported by substantial evidence in

6

the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

7

or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

8

(citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative

9

evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981);

10

Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

11

12

In general, more weight is given to a treating physician's opinion than to the opinions of

13

those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need

14

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

15

inadequately supported by clinical findings" or "by the record as a whole." Batson v.

16

Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v.

17

Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.

18

2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a

19

nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may

20

constitute substantial evidence if "it is consistent with other independent evidence in the record."

21

Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

22

23

A.      Dr. Wheeler and Dr. Trowbridge

24

Kimberly Wheeler, Ph.D., completed a state agency psychological/psychiatric evaluation

25

form based on an evaluation she conducted in early July 2007, and another such form based on a

26

REPORT AND RECOMMENDATION - 4

1    second evaluation she conducted in early October 2008, in which plaintiff was assessed with a

2    number of moderate to severe functional limitations. See AR 194-97, 274-77.  The same type of

3    psychological/psychiatric evaluation form was completed by Brett C. Trowbridge, Ph.D., based

4    an evaluation of plaintiff he conducted in early September 2009, in which plaintiff was assessed

5    with moderate to marked functional limitations as well. See AR 327-32.  Dr. Trowbridge also

6    gave her a global assessment of functioning ("GAF") score of 45.[1]  See AR 329.  After the ALJ

7    issued his decision, two more evaluation forms from Dr. Trowbridge – dated August 26, 2010,

8    and July 7, 2011, respectively– were submitted to the Appeals Council, in which plaintiff again

9    was assessed with several moderate to marked functional limitations.[2]  See AR 355-60, 372-76.

10

11

12

13    [1]  A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's
judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir.

14    2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue,
490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious

15    impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at
1076 n.1 (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-

16    TR") at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be
associated with a serious impairment in occupational functioning.").

17    [2]  Neither party has addressed the issue of whether the Court has the authority to consider these two evaluation forms
in its review of defendant's decision to deny benefits.  On the one hand, the Court lacks jurisdiction to review the

18    Appeals Council's denial of plaintiff's request for review, even though the Appeals Council considered those forms
in denying the request. See AR 4; Mathews v. Apfel, 239 F.3d 589, 594 (3rd Cir. 2001) (no statutory authority,

19    source of judicial authority to review, authorizes district court to review Appeals Council decisions to deny review).
This is because "[w]hen the Appeals Council denies a request for review, it is a non-final agency action not subject

20    to judicial review," and "the ALJ's decision becomes the final decision of [defendant]." Taylor v. Commissioner of
Social Security Admin., 659 F.3d 1228, 1231 (9th Cir. 2011).  The Court, therefore, "may neither affirm nor reverse

21    the Appeals Council's decision." Id.  On the other hand, the Ninth Circuit has held that a district court may consider
additional evidence submitted to the Appeals Council in determining whether the ALJ's decision is supported by

22    substantial evidence. See Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993).  In Ramirez, the Court of
Appeals held in relevant part that:

23              Although the ALJ's decision became the Secretary's final ruling when the Appeals Council
declined to review it, the government does not contend that the Appeals Council should not

24              have considered the additional report submitted after the hearing, or that we should not
consider it on appeal.  Moreover, although the Appeals Council "declined to review" the

25              decision of the ALJ, it reached this ruling after considering the case on its merits; examining
the entire record, including the additional material; and concluding that the ALJ's decision

26              was proper and that the additional material failed to "provide a basis for changing the hearing
decision."  For these reasons, we consider on appeal both the ALJ's decision and the
additional material submitted to the Appeals Council.

REPORT AND RECOMMENDATION - 5

1    In his decision, the ALJ addressed the mental functional assessments of Drs. Wheeler and

2    Trowbridge as follows:

3        In reaching a conclusion regarding the claimant's residual functional capacity,
         all medical opinions of record were evaluated.  These include several
4        examinations and opinions offered for the sole purpose of establishing
         eligibility for state welfare assistance. (Exhibits 1F [Dr. Wheeler's early July
5        2007 evaluation form]; 10F [Dr. Wheeler's early October 2008 evaluation
         form]; 13F [Dr. Trowbridge's early September 2009 evaluation form]).
6        Included therein, examiners found "moderate" to "marked" degree of
         symptology, and "marked to severe" degree of limitations associated with
7        cognitive and social functioning.  However, these examinations were
         conducted by one-time examiners who did not have access to the record in its
8        entirety.  Moreover, the conclusions were unsupported by the record as a
         whole.  For example, in September 2009, just 11 days after a [sic] she was
9        examined for purposes of obtaining sate [sic] welfare, the claimant reported
         significant improvement in her mood swings, less lability, and better sleep and
10       concentration. (Exhibit 14F/3).  And, her treating source concluded that she
         was doing well.  Therefore, the opinions offered in connection with the
11       claimant's request for state welfare benefits are assigned minimal weight as
         they are unsupported by the record as a whole.
12

13

14   AR 22.  Plaintiff argues the ALJ erred here by using boilerplate language that did not mention

15   Dr. Wheeler and Dr. Trowbridge by name.  As can be seen above, however, the ALJ did cite the

16   specific exhibits in the record that contained the forms they completed.  As such, the ALJ did not

17   err in failing to expressly mention their names here.  See Magallanes, 881 F.2d 747, 755, (9th Cir.

18   1989) (ALJ need not recite "magic words" in his or her decision, as no specific "incantation" is

19   required); see also Renner v. Heckler, 786 F.2d 1421, 1424 (9th Cir. 1986) ("[I]t serves no

20   purpose to require every step of each decisional process to be enunciated with precise words and

21   phrases drawn from relevant disability regulations.").

22

23       Plaintiff further argues, and the undersigned agrees, that the ALJ improperly referred to

24

25   Id. at 1454; see also Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (additional materials submitted to
     Appeals Council properly may be considered, because the Appeals Council addressed them in context of denying
26   claimant's request for review); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) (evidence submitted to Appeals
     Council is part of record on review to federal court).  As defendant does not contest the Court's authority to do so
     here, the undersigned shall evaluate the additional evaluation forms for the purpose of determining whether or not
     substantial evidence supports the ALJ's non-disability determination in this case.

REPORT AND RECOMMENDATION - 6

Dr. Wheeler as a "one-time" examiner, given that she examined plaintiff on two occasions.  On the other hand, because the ALJ did not have access to the two evaluation forms completed by Dr. Trowbridge after the ALJ issued his decision, he cannot be faulted for using that description in regard to the latter psychologist.  Nor should the ALJ be specifically faulted for not expressly noting Dr. Trowbridge's diagnosis of a personality disorder (see AR 329), given that "[t]he mere existence of [a diagnosed] impairment is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

On the other hand, the undersigned agrees with plaintiff that to the extent the ALJ found Dr. Wheeler's and Dr. Trowbridge's assessments lacked credibility because they were "offered for the sole purpose of establishing eligibility for state welfare assistance" (AR 22), he erred.  Absent "evidence of actual improprieties," the purpose for which a medical report is obtained is not a legitimate basis for rejecting it. Lester, 81 F.3d 821, 832 (9th Cir. 1996) ("An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by [defendant].").  In addition, the undersigned notes that defendant has relied in the past on consultative evaluations – and, indeed, often single "one-time" evaluations – obtained solely for the purpose of determining a claimant's eligibility for disability benefits.  If defendant can rely on such evaluations to make a determination of non-disability, then plaintiff also should be able to rely on them to support her claim that she is disabled.

The ALJ further erred in finding the assessments of Drs. Wheeler and Trowbridge were not supported by the record as a whole.  First, the undersigned agrees with plaintiff that in so finding, the ALJ was not sufficiently specific. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) (insufficient to reject opinion of treating or examining physician merely on stated basis that record lacked objective medical findings to support that opinion).  In addition, as plaintiff

REPORT AND RECOMMENDATION - 7

1   points out, there is support in the record, namely the opinion of Paul Choi, M.D., which, as

2   discussed in greater detail below, the ALJ also failed to properly consider.  While the ALJ did

3   cite one mental health treatment note in the record in which plaintiff was noted to experience an

4   improvement in her mental health symptoms and to be doing well (see AR 346), and there is a

5   later, early October 2010, report from plaintiff that she was "[d]oing better" on her medications

6   (AR 404), that evidence is called into question by the moderate to marked functional limitations

7   assessed by Dr. Trowbridge in his two most recent evaluation forms.  The ALJ's rejection of Dr.

8   Wheeler's and Dr. Trowbridge's assessments, therefore, cannot be upheld.

10       B.    Dr. Choi

11       Plaintiff also challenges the ALJ's following findings:

13   . . . [T]he claimant underwent [a] consultative psychiatric examination
     [performed by Paul Choi, M.D., in late January 2008,] in connection with her
14   application for social security disability benefits. (Exhibit 5F).  Here, she
     reported feeling "very depressed" along with low self worth.  [Dr. Choi] noted
15   that she was still grieving the loss of her spouse.  The claimant also reported
     panic attacks, particularly in crowded places, occurring on average every two
16   weeks.  And, she stated that she becomes "spacey and forgetful" and she is
     generally ill at ease around other people.

18   On mental status examination, the claimant's speech was mildly rapid and
     circumstantial.  There were no gross abnormalities in thought content other
19   than mention of Satan and demons.  [Dr. Choi] noted that this may be a
     product of her religious beliefs or an attempt to make sense of her personal
20   loss with regard to divorce.  Otherwise, the claimant stated she was depressed,
     but she smiled and laughed some during the interview.  Alternatively, she
21   became tearful when speaking of her ex-husband, and other times she was
     anxious, twisting her hair rapidly in her fingers.  The claimant was fully
22   oriented and she had no difficulty with forward digit testing although she
     recalled 1/3 words after 5 minutes.  Nevertheless, she correctly recited her
23   date of birth, age, and social security number.  Testing further revealed some
     lapses in concentration and attention, including misunderstanding the 2nd step
24   of a 3-step command.  In any event, she reported no difficulties with activities
     of daily living.  The examiner ultimately diagnosed major depressive disorder

REPORT AND RECOMMENDATION - 8

1   and methamphetamine dependence in sustained full remission with global
2   assessment of functioning was [sic] recorded at 52.[3]

3   The examining psychiatrist further concluded that the claimant would benefit
    from additional treatment.  He then opined that the claimant retained the
4   capacity to perform simple and repetitive tasks, but that she would likely need
    reminders and a patient supervisor.  He noted that her ability to perform
5   detailed and more complex tasks were somewhat compromised, but he felt
    that she would have no difficulty interacting with coworkers or the public.
6   And, he explained "that while the claimant exhibited symptoms of depression
    and grief, which would make regular, consistent attendance difficult,
7   ultimately her return to work would help her to function more appropriately.
    Overall, the examiner reported that the claimant's overall workplace
8   performance would improve with treatment.

9   AR 20-21.  Specifically, plaintiff asserts the ALJ misquotes and mischaracterizes the following

10  portion of Dr. Choi's opinion: "While her struggles with depression and grieving would make it

11  difficult for her to maintain regular attendance in the workplace or perform work on a consistent

12  basis at this time, it is also quite likely that if she was to return to work this might help her begin

13  to function more appropriately in social and occupational settings." AR 236.

14

15          The undersigned agrees that the ALJ's use of the word "would" instead of "might" gives

16  the indication that Dr. Choi found plaintiff definitely would function better if she were to return

17  to work, whereas Dr. Choi's opinion is not as clear in that regard.  The undersigned does not

18  agree with plaintiff, however, that Dr. Choi found she would be *unable* to maintain regular,

19  consistent attendance, but that her symptoms of depression and grief would make her ability to

20  do so *difficult*.  Because Dr. Choi did not define the term "difficult", it is not at all clear that he

21  believed plaintiff's problems in this area are as great as she alleges.  Nevertheless, the ALJ erred

22  in failing to explain why he was not adopting *any* limitation with respect to plaintiff's ability to

23  maintain attendance in the workplace, when Dr. Choi expressly found – albeit without much in

24

25

26  _____

3 "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting DSM-IV-TR at 34).

REPORT AND RECOMMENDATION - 9

1    the way of specificity – such a limitation. See AR 19, 21.

2    II.      The ALJ's Assessment of Plaintiff's Credibility

3              Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

4    642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

5    In addition, the Court may not reverse a credibility determination where that determination is

6    based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for

7    discrediting a claimant's testimony should properly be discounted does not render the ALJ's

8    determination invalid, as long as that determination is supported by substantial evidence.

9
10   Tonapetyan , 242 F.3d at 1148.

11             To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

12   reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

13   testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

14   Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

15
16   claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

17   and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of

18   malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

19             In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

20   credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

21
22   symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

23   1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

24   physicians and other third parties regarding the nature, onset, duration, and frequency of

25   symptoms. See id.

26             In this case, the ALJ found plaintiff to be not fully credible in part because although there

REPORT AND RECOMMENDATION - 10

"is no doubt that she initially presented with numerous symptoms of mental illness[,] . . . with consistent treatment including medication and therapy her symptoms stabilized." AR 22.  The ALJ may discount a claimant's credibility on the basis of medical improvement.  See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  Plaintiff argues the record shows only temporary improvement.[4] The record, though, shows this is because she has not been consistent in pursuing it (see AR 284, 296, 307, 309-10) – which tended to correspond with her periods of increased symptoms – thus supporting the ALJ's emphasis on plaintiff's overall stability and improvement with *consistent* treatment (see AR 212, 214, 241, 243-53, 311-14, 285-89, 292, 294-295, 297-06, 308, 317-18, 346).  Plaintiff's inconsistency in pursuing treatment, furthermore, continued even after the ALJ issued his decision.  See AR 389-90, 392-93, 395-97, 400-01.  On the other hand, as discussed above, the two most recent evaluation forms from Dr. Trowdrige, which the ALJ did not have the benefit of reviewing, call into some question the extent to which plaintiff continued to improve.  Thus, substantial evidence does not fully support this stated basis for finding her to be not entirely credible.

The ALJ, though, also discounted plaintiff's credibility on the basis that she "was able to

---

[4] Plaintiff argues as well that "even if her condition had improved to the point of being able to sustain competitive employment as of [September 2009, the date of the treatment note indicating stability and improvement cited by the ALJ in rejecting the opinions of Dr. Wheeler and Dr. Trowbridge], she would still be entitled to a closed period of disability from her alleged onset date . . . until the date of that improvement." ECF #17, p. 23.  But as explained elsewhere herein, even in light of the ALJ's errors in evaluating the medical and lay witness evidence in the record, plaintiff has failed to establish as of yet that she in fact has been disabled during the relevant time period in this case. Accordingly, plaintiff's argument concerning a closed period of disability is rejected.  Plaintiff further argues that "any conclusion of medical improvement" here is inconsistent with defendant's determination in mid- May 2012, that she became disabled as of May 6, 2010.  See ECF #19, p. 1, 4, Exhibit A.  But that determination was based on subsequent applications for disability insurance and SSI benefits plaintiff submitted, and therefore is not part of the record before the Court or subject to judicial review in this matter.  Nor is it at all clear as to why or on what basis plaintiff was granted disability in relation to those applications.  In addition, plaintiff was granted disability starting after the date of the ALJ's decision in this matter, and there is no evidence or indication that such disability should be extended to any earlier period.  Of course, on remand, that subsequent disability determination certainly can be taken into consideration.  It does not form a basis for such remand, however, in this case.

REPORT AND RECOMMENDATION - 11

perform fairly typical activities of daily living without assistance," which included "providing

care for her ailing mother, and subsequent care for her elderly father." AR 22.  There are "two

grounds for using daily activities to form the basis of an adverse credibility determination." Orn

v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  First, such activities can "meet the threshold for

transferable work skills." Id.  Thus, a claimant's credibility may be discounted if he or she "is

able to spend a substantial part of his or her day performing household chores or other activities

that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability

benefits, and "many home activities may not be easily transferable to a work environment." Id.

In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized

for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722.

Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or

her] other testimony." 495 F.3d at 639.

Plaintiff argues the evidence in the record of her daily activities do not demonstrate any

conflict with her testimony or reflect abilities transferrable to a work setting.  The undersigned

disagrees.  Although prior to her alleged onset date of disability, plaintiff reported in late January

2006, that "she is the one that pays all the bills, does the cleaning, keeps everything in order and

she cannot stand the thought that nobody is taking care of her house." AR 212.  In late May

2008, plaintiff reported that she was "basically the sole caretaker of her parents," and that her

mother could "be quite demanding." AR 313.  In late June 2008, plaintiff again reported "caring

for [her] ill mother who now ha[d] a feeding tube and [who wa]s very demanding," and not being

able to sleep "due to this 24 h[ou]r care." AR 308.  In late April 2009, plaintiff reported in regard

to "various family members who come over frequently," being "solely responsible to feed

REPORT AND RECOMMENDATION - 12

everyone and to clean up afterwards" (AR 287), and in early May 2009, she reported "constantly

doing dishes, picking up after people" (AR 286).

In early December 2010, she reported that she was "tired of washing dishes and doing

things around the house and then having it messed up." AR 397.  In early March 2011, plaintiff

again complained of others "mess[ing] things up" after she cleaned, that her sister thought she

was "trying to take over [with her] kids," and that she "would like to tell her sister she would like

to have [sic] of the kitchen/living room/cooking the meals for the children/and getting them off

to school and bed," further reporting that "'I can do that . . . I want to feel productive . . . I'm a

good mom.'" AR 392; see also AR 391 (stating "she has 'backed off a little' w/helping her sister

and family around the house (i.e[.] laundry/cleaning/dishes)").  Clearly, such activities show an

ability to perform work-related – and indeed what appear to be fairly strenuous – activities at a

level not consistent with claims of total disability.  Thus, the ALJ did not err here.[5]

III.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

take into account," unless the ALJ "expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

link his determination to those reasons," and substantial evidence supports the ALJ's decision.

---

[5] The fact that one of the reasons for discounting plaintiff's credibility was improper, does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case. Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").  While in this case only one of the ALJ's two stated reasons for discounting plaintiff's credibility has been found to be proper given the additional evidence submitted to the Appeals Council, that remaining reason, as discussed above, finds ample support in the record, and therefore is sufficient to uphold the ALJ's credibility determination.

REPORT AND RECOMMENDATION - 13

1   Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample,

2   694 F.2d at 642.

3       The record contains a written statement from plaintiff's daughter in which she reports her

4   observations of plaintiff's symptoms and limitations. See AR 155-62.  The undersigned agrees

5   with plaintiff that the ALJ erred in failing to specifically consider that statement in his decision,

6   given that, as noted above, such statements are "competent evidence that an ALJ must take into

7   account," *unless* he or she "expressly determines to disregard" them and "gives germane reasons

8   for doing so." Lewis, 236 F.3d at 511.  This the ALJ did not do.  Defendant argues no portion of

9

10  plaintiff's daughter's statement undermines the ALJ's adverse credibility determination.  But

11  plaintiff's daughter stated that plaintiff had "a lot of behavior problems" and did "not know how

12  to communicate w/ people." AR 161-62.  While such observations might not ultimately result in

13  additional limitations being added to the ALJ's residual functional capacity assessment discussed

14  below, it is for the ALJ to make this determination in the first place.

15

16  IV.    The ALJ's Findings at Step Five

17      Defendant employs a five-step "sequential evaluation process" to determine whether a

18  claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found

19  disabled or not disabled at any particular step thereof, the disability determination is made at that

20  step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be

21  made on the basis of medical factors alone at step three of that process," the ALJ must identify

22  the claimant's "functional limitations and restrictions" and assess his or her "remaining

23  capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184

24

25  *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to

26  determine whether he or she can do his or her past relevant work, and at step five to determine

REPORT AND RECOMMENDATION - 14

whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or

REPORT AND RECOMMENDATION - 15

1  she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

2      The ALJ in this case found plaintiff had the residual functional capcacity:

3      **. . . to perform a full range of work at all exertional levels, but she is limited**
4      **to simple, routine, repetitive tasks not performed in [a] fast-paced**
      **production environment, involving only simple, work-related decisions and**
5      **in general, [with] relatively few work place changes; and, she is further**
      **limited to occasional interaction with supervisors/coworkers/general public.**
6
7  AR 19 (emphasis in original).  At the hearing, the ALJ posed a hypothetical question to the

8  vocational expert containing substantially the same limitations as were included in the ALJ's

9  assessment of plaintiff's residual functional capacity. See AR 50-51.  In response to that

10 question, the vocational expert testified that an individual with those limitations would be able to

11 perform other jobs. See AR 51.  Based on the vocational expert's testimony, the ALJ found at

12 step five that plaintiff would be capable of performing other jobs existing in significant numbers

13 in the national economy, and thus was not disabled. See AR 23-24.

14
15      Plaintiff argues the ALJ erred in determining her to be not disabled at step five, because

16 the hypothetical question he posed to the vocational expert was improper.  In light of the ALJ's

17 errors in evaluating the medical and lay witness evidence discussed above, it cannot be said that

18 the ALJ's residual functional capacity assessment – and thus the hypothetical question which is

19 based on that assessment – is completely accurate.  Accordingly, the ALJ's RFC assessment and

20 the hypothetical question he posed were improper, and for that reason so too is his determination

21 of non-disability at step five.

22
23      The undersigned rejects, however, plaintiff's argument that she should be found disabled

24 based on the vocational expert's testimony that a marked limitation in the ability to respond

25 appropriately to and tolerate the pressures and expectations of a normal work setting would result

26 in an inability to perform other jobs. See AR 52.  It is true that Dr. Wheeler and Dr. Trowbridge

REPORT AND RECOMMENDATION - 16

assessed plaintiff with such a limitation on more than one occasion. <u>See</u> AR 196, 276, 330, 358. It is not at all clear, though, that the ALJ would be required to adopt their opinions regarding that limitation, in light of the propriety of the ALJ's adverse credibility determination and the other medical evidence in the record.[6]  For example, as discussed above, the record does indicate that plaintiff achieved stability and improvement with consistent medication, although the two most recent evaluation forms from Dr. Trowbridge call that somewhat into question.

Dr. Choi, furthermore, gave no indication in his evaluation report that plaintiff would be unable to respond appropriately to and tolerate the pressures and expectations of a normal work setting, but instead opined that continued engagement with mental health treatment likely would result in improved functioning in the work place. <u>See</u> AR 235-36.  Two other consultative, non-examining psychologists also found plaintiff had only a moderate limitation in her ability to respond appropriately to changes in the work setting, and in fact that she could "adapt to routine changes in the workplace." AR 270-71.  As such, it must be determined on remand the extent to which plaintiff is able to deal with work pressures and expectations.

V.     <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." <u>Smolen</u>, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate

---

[6] Where the ALJ fails "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." <u>Lester</u>, 81 F.3d at 834 (citation omitted).  However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved.  <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1116 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 17

award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because, as discussed above, issues still remain in regard to the medical opinion source and lay witness evidence in the record, plaintiff's residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy, it is appropriate to remand this matter for further administrative proceedings.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

REPORT AND RECOMMENDATION - 18

1    is directed set this matter for consideration on **October 12, 2012**, as noted in the caption.

2         DATED this 24th day of September, 2012.

3

4

5

6                                              Karen L. Strombom
                                               United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 19